United States District Court
Southern District of Texas
**ENTERED**
January 27, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LUCIA A.,[1] *Plaintiff*, v. ANDREW SAUL,[2] Commissioner of Social Security, *Defendant*. | Case No. 4:19-CV-04685 |

# REPORT AND RECOMMENDATION

Plaintiff Lucia A. filed this suit seeking judicial review of the denial of disability and disability insurance benefits under Titles II of the Social Security Act ("the Act"). ECF No. 1. ECF No. 9. The Court referred the case to Judge Palermo for a report & recommendation in accordance with 28 U.S.C. § 636(b)(1)(B). ECF No. 10. The Parties' cross-motions for summary judgment are pending. ECF Nos. 12, 16. Based on the briefing and the record, the Court recommends that the Plaintiff's motion be **DENIED**, the Defendant's motion be **GRANTED**, and the

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] Andrew Saul has been automatically substituted for the previously named defendant in this matter pursuant to Federal Rule of Civil Procedure 25(d) and the last sentence of 42 U.S.C. § 405(g).

Commissioner's final decision in the underlying administrative action be **AFFIRMED**.

I. **BACKGROUND**

Plaintiff is a 59-year-old woman, born on October 17, 1961. R. 31.[3] The Plaintiff has an associate's degree in drafting technology in addition to a few years of college courses in pre-architecture and engineering. R. 31, 135–42. The Plaintiff worked as a microbiology tech, an operator for a drafting contracting company, a drafter, and a warehouse lead at a grocery store. R. 184-86, 522-23. The Plaintiff has not returned to work since February 15, 2012. R. 522–23.

The Plaintiff claims she suffers from both physical and mental impairments. R. 22, 173–77. The Plaintiff ailments include degenerative disc disease of the cervical and lumbar spine. R. 22, 144, 213, 713. The Plaintiff additionally suffers from a headache disorder caused by white matter hyperintensities plus a cognitive disorder and a mood disorder, often characterized as depression and anxiety. R. 22, 144, 733. The Plaintiff believes that her conditions were exacerbated following a severe car accident on October 15, 2020. R. 142, 173, 703.

On September 23, 2013, the Plaintiff filed her application for disability insurance benefits and supplemental security income under Title II of the Act,

---

[3] "R." citations refer to the electronically filed Administrative Record, ECF No. 11.

2

claiming both physical and mental impairments. R. 32, 520–28. The Plaintiff based[4] her application on traumatic brain injury, hypothyroidism, high blood pressure, anxiety, and depression. R. 521. On February 11, 2014 the Commissioner denied her claims. R. 167. Plaintiff requested reconsideration, and the Commissioner again denied her claims on June 4, 2014. R. 258.

Pursuant to Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on February 17, 2016. R. 132–61. An attorney represented Plaintiff at the hearing. R. 132. Plaintiff, a medical expert, and a vocational expert testified at the hearing. *Id.* On August 24, 2016 the ALJ issued a decision denying Plaintiff's request for benefits. R. 208–40.

Plaintiff requested that the Appeals Council review the ALJ's decision. On August 21, 2017, the Appeals Council granted Plaintiff's request for review. R. 115, 241–45. The Appeals Council remanded the case to the ALJ to conduct a supplemental hearing because the ALJ received interrogatories responses post-hearing from a neuropsychologist. R. 19, 243. Pursuant to the remand instructions, the ALJ scheduled another hearing for April 10, 2018, but that hearing was postponed at Plaintiff's request for a psych evaluation and to schedule a medical

---

[4] The relevant time period is February 15, 2012—Plaintiff's alleged onset date—through December 31, 2017—Plaintiff's last insured date. R. 213. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin*, 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000).

expert to testify. R. 19. On July 27, 2018, the Plaintiff, a psychologist, and a vocational expert testified at a second full hearing. R. 19, 41–108. The ALJ issued another decision denying the Plaintiff's request for benefits on October 12, 2018. R. 16.[5] The Plaintiff again requested that the Appeals Council review the ALJ's decision, but the Appeals Council denied her request for review on September 27, 2019. R. 1–9.

On December 2, 2019 the Plaintiff filed this civil action, ECF No. 1. In this

---

[5]An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ here determined Plaintiff was not disabled at Step Five. At step one, the ALJ found that the Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of February 15, 2012 through her date last insured of December 31, 2017. (20 C.F.R. 404.1571 *et seq.*). R. 21. At step two the ALJ found that the Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, headache disorder, cognitive disorder secondary to white matter disease verses cerebral trauma and associated mood symptoms. (20 C.F.R. 404.1520(c)). R. 22. As step three the ALJ determined that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526). R. 22. The ALJ found that the Plaintiff has the Residual Functional Capacity ("RFC") to perform a reduced range of medium work as defined in 20 C.F.R. 404.1567(c). Specifically, the ALJ found that the Plaintiff can lift and carry up to 50 pounds occasionally, 25 pounds frequently; sit and stand/walk each for up to 6 hours total in an 8-hour day with no requirement for a sit-stand option; frequently reach overhead with the bilateral upper extremities (unlimited reaching in other directions, handling, fingering, and feeling bilaterally); frequently balance, stoop and kneel; occasionally crouch and crawl; frequently climb ramps/stairs; and occasionally climb ladders/ropes/scaffolds no higher than 3 feet. In addition, the Plaintiff must avoid even moderate exposure to hazards such as machinery and unprotected heights. Mentally, the Plaintiff's ability to understand, remember, and carry out job instructions is limited, but she can still understand, remember, and carry out short, simple instructions. The ALJ found the Plaintiff's ability to make judgments in work related decisions is also impaired, but she can make simple work-related decisions. R. 25. At step four, the ALJ determined that through the date last insured, the Plaintiff was unable to perform any past relevant work. (20 C.F.R. 404. 1565). R. 30. At step five the ALJ concluded that through the date last insured considering the Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the Plaintiff could have performed, including (insert the jobs). (20 C.F.R. 404.1569 and 404.1569a). R. 31. Therefore, the ALJ concluded that a finding of "not disabled" was appropriate. R. 32.

appeal, Plaintiff challenges the ALJ's Residual Functional Capacity ("RFC"), arguing the ALJ committed legal errors in evaluating the medical evidence and failed to consider all the Plaintiff's severe impairments. Pl.'s MSJ Brief, EFC No. 13 at 3–13. Defendant opposes Plaintiff's motion, arguing that the ALJ's findings were proper and supported by substantial evidence. Def.'s MSJ Brief, ECF No. 17 at 3–15.

## II. STANDARD OF REVIEW

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any facts, if supported by substantial evidence, shall be conclusive[.]

*Id*.

Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id*.; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148,

1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestekl*, 139 S. Ct. at 1154.

"The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Thornhill v. Colvin*, No. 14-CV-335, 2015 WL 232844, at *3 (N.D. Tex. Jan. 16, 2015) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id*. (quotations omitted). The "substantial evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822-23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823.

## III. ANALYSIS

The Plaintiff argues that the ALJ erred when conducting his RFC analysis by improperly evaluating the medical opinion evidence of record. ECF No. 13 at 3. In addition, the Plaintiff asserts that the ALJ's RFC finding is not supported by substantial evidence because he failed to accommodate every impairment in assessing the Plaintiff's limitations. ECF No. 13 at 11. The Commissioner contends that the ALJ properly determined the RFC and his opinion is supported by substantial evidence. ECF No. 17 at 3–12.

**A. The ALJ's RFC Determination Is Supported by Substantial Evidence.**

*1. The ALJ properly examined the medical opinions.*

A claimant bears the burden of proving that he or she suffers from a disability. However, the mere presence of an impairment is not enough to establish that one is suffering from a disability. *Shipley v. Sec'ty of HHS*, 812 F.2d 934, 935 (5th Cir. 1987). Rather, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir.2000)). "The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the

7

claimant can perform other substantial work in the national economy." *Id.* Once the Commissioner makes that showing, the burden shifts back to the claimant to rebut the finding. *Id.* The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). Thus, when an ALJ conducts his RFC findings and limitations, the Plaintiff bears the burden to establish that her impairments result in significant limitations to her potential RFC. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

> The following [Social Security] rulings are relevant to this dispute. First, SSR 96–8p provides that a residual functional capacity (RFC) "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." 1996 WL 374184, *1 (S.S.A.1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* at *2. "The RFC assessment is a function-by function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. "However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work...." *Id.* RFC involves both exertional and nonexertional factors. Exertional capacity involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. *Id.* at *5. "Each function must be considered separately." *Id.* "In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis...." *Id.* at *7.

*Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).[6]

As an administrative factfinder, the ALJ is entitled to significant deference in

---

[6] The Social Security Administration's rulings are not binding on this court, but they may be consulted when the statute at issue provides little guidance. *Id.*

8

deciding the appropriate weight to accord the various pieces of evidence in the record, including the credibility of medical experts and the weight to be accorded their opinions. *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

> *a. The ALJ properly considered the limitations Dr. Enright identified.*

The Plaintiff argues that the ALJ erred in conducting his RFC analysis as the ALJ claimed to afford "great weight" to the opinion of Dr. Enright but failed to adopt all of Dr. Enright's opinions in establishing the Plaintiff's limitations. ECF No. 13 at 5. Specifically, the Plaintiff insists that the ALJ failed to account for the social limitations which Dr. Enright prescribed. ECF No. 13 at 6. According to the Plaintiff, if the ALJ "accepts the opinion of a medical source, then he is required to include the limitations identified by that medical source in his RFC finding." ECF No. 13 at 3 (citing 20 C.F.R. § 404.1545(e); Social Security Ruling ("SSR") 96-8p; SSR 96-5p).

Contrary to the Plaintiff's assertion, an RFC assessment comprises more than adopting an "all or nothing" approach to existing medical opinions. The RFC assessment must include a resolution of any inconsistencies in the evidence. SSR 96-8p, 1996 WL374184. The "ALJ has sole responsibility for determining a claimant's disability status," *Greenspan*, 38 F.3d at 237, and is "free to reject the opinion of any physician when the evidence supports a contrary conclusion," *Newton v. Apfel*, 209 F.3d 448, 454 (5th Cir. 2000). The regulations provide that "[i]f any of

9

the evidence in [claimant's] case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all the other evidence and see whether we can decide whether [claimant is] disabled based on the evidence we have." 20 C.F.R. § 404.1527(c)(2). "In sum, the ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." *Greenspan*, 38 F.3d at 237 (quoting *Scott v. Heckler*, 770 F.2d at 485) (internal quotations omitted).

Here, in one of the most detailed and comprehensive opinions this Court has reviewed, the ALJ stated that he afforded great weight to the opinion of Dr. Enright, a licensed clinical psychologist and long-time medical expert for the Social Security Administration. R. 28–29. Specifically, the ALJ noted that Dr. Enright examined the Plaintiff on two occasions and his objective clinical findings and observations, *for the most part*, supported his opinions. R. 29. However, the ALJ concluded that the part of Dr. Enright's opinion concerning the social limitations was not supported by the record as a whole. R. 29.[8] In reaching this conclusion, the ALJ observed the

---

[8] Dr. Enright, a licensed clinical psychologist, examined the Plaintiff on December 2013 and provided an analysis of limitations. R. 1040–49. He opined that the claimant is "currently able to understand and sometimes remember simple instructions. She may have difficulty carrying out even simple instructions without reminders, which would likely include both visual and auditory prompts. The claimant's ability to respond appropriately to supervision and co-workers is currently limited consequent to the above-mentioned consequent psychological conditions." R. 1048–49. Additionally, in February 2016 the ALJ sent. Dr. Enright a medical interrogatory requesting an additional and updated opinion regarding the Plaintiff's mental impairments and RFC. R. 28, 1164–71. In response, Dr. Enright opined that the Plaintiff had moderate limitations in all areas including social functioning, concentration, persistence, or pace, and restriction of activities of

record showed that the Plaintiff had consistently demonstrated essentially normal social skills and behaviors during appointments, including the ability to establish a rapport with unfamiliar examiners.[9] R. 29.

The Plaintiff insists that the ALJ substituted his "lay judgment of [the Plaintiff's] appearance at medical evaluations" for that of a mental health professional. ECF No. 13 at 7. The Court disagrees. The ALJ rejected Dr. Enright's opinion regarding social limitations based on the record as a whole, including the testimony of another medical expert. Dr. Enright's opinion regarding the degree of limitations contradicted another psychiatric medical expert in the record, Dr. Nicole

---

daily living. R. 1164–71. Dr. Enright also opinioned that regarding her ability to do simple work-related activities, she possessed mild limitations in her ability to understand and carry out instructions and make work-related decisions. *Id*. Dr. Enright examined the Plaintiff again in June 2018, offering a third opinion, that the Plaintiff is able to understand and remember complex decisions but may have difficulty carrying out difficult decisions. R. 1628–45. He also further opined that the Plaintiff has moderate limitations in her ability to deal with coworkers and supervision. R. 1643–45. The ALJ included each of Dr. Enright's mental limitations regarding her RFC except for social limitations. *See* R. 28–28.

[9] R. 182–84 (consultative examination notes by Dr. Darryl Bindschadler assessed the Plaintiff as having no significant social limitations, noting her ability to accept instructions and respond appropriately to criticism from supervisors and her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes); R. 532–39 (The Plaintiff's sister, Debra Floyd, commented that the Plaintiff likes to "socialize whenever possible" although she does not like large crowds.); R. 591–98 (Additionally, the Plaintiff's brother-in-law noted the Plaintiff liked socializing and talking with people as much as she can, including her doctors); R. 826–33 (Plaintiff's Occupational Therapist noted that Plaintiff demonstrated a good ability to participate in her tasks and presented well); R. 846, 849–50 (Dr. Glen Page notes that a few months after the accident, the Plaintiff appeared well and discussed wanting to return to work); R. 1095 (Dr. Sam Goldstein, Ph. D, observed the Plaintiff and noted her strong cooperation and well demeanor, could correspond well without difficulty, and her attention and concentration were positive and unimpaired. Additionally, Dr. Goldstein assessed that "overall [Plaintiff would] not [have] difficult[y] … establish[ing] working relationship[s].").

Mara Martinez, Psy.D, who testified at the second hearing. Dr. Martinez had not personally examined the Plaintiff and opined that the claimant's mental impairments were non-severe. R. 29. The ALJ gave this opinion some weight because Dr. Martinez had access to the full record, and he found that the objective evidence could support a finding of non-severity. *Id*. But based on her processing speed, word choice difficulties, and conversation pace, the ALJ found Plaintiff had a significant neurocognitive impairment that limited her to simple unskilled work. *Id*. Thus, the ALJ discounted Dr. Martinez's opinion of non-severe impairments in favor of Dr. Enright's assessment in all respects other than the social limitation. *Id*. The ALJ's RFC determination is supported by substantial evidence.

> *b. The ALJ properly considered the opinion of Plaintiff's treating physician.*

Plaintiff also argues that the ALJ committed error in failing to give deference to the opinion of her treating primary care physician, Dr. Glen Page. ECF No. at 2. The Fifth Circuit has held that an ALJ may reject the opinion of the primary treating physician *only if* the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2). *Newton*, 209 F.3d at 453 (emphasis in original).[10] Notwithstanding the § 404 factors, the ALJ may

---

[10] These factors are: (1) the physician's length of treatment of the claimant; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the extent to which the physician's opinion is supported by the medical record; (5) the consistency of the opinion with the

12

discount the weight of a treating physician's opinion upon a showing of good cause that the evidence is too brief or conclusory such that it lacks strong persuasive weight; is unsupported by medically acceptable clinical, laboratory, or diagnostic technique; or is otherwise unsupported by the evidence. *Newton,* 209 F.3d at 455–56; *see Scott*, 770 F.2d at 486.

A reading of the ALJ's decision shows that he carefully considered, but ultimately rejected, the treating physicians' assessment of Plaintiff's work limitations. *See Greenspan*, 38 F.3d at 237. In assessing Dr. Page's opinions, the ALJ noted that Dr. Page's limitations contradicted his own medical notes while treating the Plaintiff. R. 27.[11] In affording little weight to the Dr. Page's opinions regarding the Plaintiff's limitations, the ALJ stated that Dr. Page's assessment failed to indicate the basis of his assessment and did not cite to any objective clinical or diagnostic findings to support the degree of limitation suggested. R. 27 (referencing

---

record as a whole; and (6) the specialization of the treating physician. SSR 96-5p, 1996 WL 374183.

[11] The ALJ discerned that Dr. Page's treatment notes reflect essentially normal physical examinations, thus contradicting his limitations in the record. R. 27. Specifically, the record indicates her neurological, psychiatric, musculoskeletal, cardiac, pulmonary, gastrointestinal, and genitourinary assessments all as intact and within normal limits. R. 717, 740, 751, 761, 774, 780, 784, 787, 791, 795, 799. 863, 870, 878, 1130, 1141, 1144, 1147, 1310, 1368, 1371, 1517, 1543, 1574. Furthermore, Dr. Page noted in February 2011 that the Plaintiff was doing well and "should be able to return to work soon." R. 822, 846. For example, while Dr. Page's limitations include "incapable of even low stress jobs" due to mental impairments, he noted shortly before that the Plaintiff had "no memory problems" and "denies any symptoms of anxiety or depression" in addition to reporting sleeping well and treating the headaches successfully with hydrocodone. R. 761, 1106–08; 1172–74.

R. 1106–08; 1172–74).[12] Moreover, Dr. Page's assessment is contrary to the overwhelming evidence in the record.[13] Accordingly, there was good cause to discount the treating physician's assessment and substantial evidence supports the ALJ's review of the medical evidence. *Greenspan*, 38 F.3d at 238 (substantial evidence found where record supported the ALJ's finding that the doctor' records and recommendations were contradictory and numerous outside opinions and testing contradicted the treating physician).

### 2. *Substantial evidence supports the ALJ's RFC and hypothetical question.*

As a second point of error, the Plaintiff argues the ALJ failed to accommodate all the Plaintiff's severe impairments in the hypothetical questions to the vocational expert and RFC analysis. ECF No. 13 at 11. For this reason, the Plaintiff claims the

---

[12] For example, Dr. Page restricted the plaintiff to sitting and standing/walking to 2 hours or less with lifting less than 10 pounds occasionally without stating how he arrived at this determination. R. 1106–08, 1172–74.

[13] Multiple medical experts stated that the Plaintiff did not present such severe exertional limitations. R. 144–56 (Dr. Eskinazi assessing that the Plaintiff did not present exertional limitations, but should not climb, and only occasionally balance); R. 168–79 (Dr. Bindschadler finding the Plaintiff possessed occasional postural limitations with an ability to perform more physical and mental activities than stated); R. 180–87 (Dr. Bindshadler conducting an RFC assessment of the Plaintiff finding an unlimited ability to balance, kneel, crouch, and crawl but avoid climbing ramps, stairs, ladders, ropes, and scaffolds dur to her seizures); R. 189–99 (Dr. Grant Fleming finding the Plaintiff should be able to perform more physical and mental activities than what is stated, noting her ability to drive to the exam which was 55 miles away); R. 200–07 (Dr. Thomas Toft found Plaintiff could occasionally perform all functions, including balancing, stooping, kneeling, crouching, and crawling); R. 1050–55 (Dr. Heckard opining that the Plaintiff has no deficits of motor, sensory, or reflex functions; no measured muscular asymmetry or atrophy; is able to sit, stand, and walk unassisted and can handle objects with both gross and fine manual motor dexterity; and not presenting mental status features which would significantly impair or preclude her ability to make reasonable workplace decisions).

ALJ's RFC lacks substantial evidence. ECF No. 13 at 11–13. Specifically, the ALJ found that the Plaintiff's severe impairments included degenerative disc disease of the cervical and lumbar spine,[14] but according to the Plaintiff had failed to adopt any limitations related to these impairments in his RFC or hypothetical questions to the vocational expert. ECF No. 13 at 11–13.

Plaintiff's argument is not supported by the record, which shows that the ALJ considered the Plaintiff's functional limitations caused by the degenerative disc disease of the cervical and lumbar spine in his RFC analysis. The RFC assessment is a function-by-function assessment based upon all the relevant evidence of an individual's ability to do work-related activities. *Myers* 238 F.3d at 620. In his RFC assessment, the ALJ detailed the functional capacity of the Plaintiff caused by these two impairments and determined that medium exertion level was possible based upon the record. R. 27. Specifically, the ALJ stated that evidence of degenerative changes in the cervical and lumbar spine in the record would not preclude the ability to perform at a medium level of exertion. R. 27. The ALJ noted that laboratory studies and imaging results indicated only mild degenerative changes.[16] The ALJ

---

[14] The ALJ found that the Plaintiff had the following severe impairments through the date last insured: degenerative disc disease of the cervical and lumbar spine, headache disorder, cognitive disorder secondary to white matter disease versus cerebral trauma and associated mood symptoms. R. 22.

[16] R. 713 (Remote X-ray study of the lumbar spine on September 4, 2008 noted "degenerative disc changes best appreciated at L5-S1 and degenerative facet disease best appreciated at L4-5" but presented no evidence of acute bone injury, and bony alignment was within normal limits); R. 690

also noted that Plaintiff consistently presented with good coordination and balance, normal rapid alternative movements, normal gait and station, as well as the ability to perform high level postural and ambulatory activities without the use of any assistive device. R. 27.[17] Thus, the ALJ performed the required functional analysis.

Finally, Plaintiff's argument that these limitations were not accounted for in the ALJ's hypothetical question to the vocational expert is not consistent with the record. The ALJ included these limitations in his hypotheticals.[18] Accordingly, substantial evidence in the record supports the ALJ's RFC and hypothetical question.

However, the Commissioner concedes in his brief that the jobs identified by the vocational expert failed to account for the Plaintiff's limitations in crouching and are inconsistent with the full range of medium work. ECF No. 17 at 15. The ALJ

---

(MRI suggested mild facet arthropathy bilaterally from C3-4 through C6-7 with no significant spinal canal or neural foraminal narrowing).

[17] R. 826–28 (Plaintiff noted by occupational therapist as demonstrating good ability to participate in ADL tasks with good strength and coordination); R. 829–33 (Plaintiff described by physical therapist as having an active range of motion with typical gait patterns and using the Wii Fit at home regularly to increase abilities); R. 697, 699, 701 (Plaintiff described by Dr. Page as having normal rapid alternative movements with mild neck spasms); R. 1519 (Plaintiff assessed by Dr. Spackman as having a normal range of motion and strength with no tenderness or swelling). R. 703 (Plaintiff examined by Dr. Hammond, noting her normal rapid alternating movement, normal gait and station).

[18] After conducting an RFC analysis—and concluding that the Plaintiff's degenerative disc disease in the cervical and lumbar spine would not preclude the ability of the Plaintiff to perform work at a medium level of exertion—the ALJ asked the Vocational Expert his hypothetical questions based upon this RFC analysis. R. 24, 25, 93–102. Notably, the ALJ also included the disc disease in his hypothetical questions to the vocational expert, asking about a hypothetical individual with "a combination of impairments…[including] degenerative disc disease of the cervical spine and lumbar spine…." R. 95–97.

found that Plaintiff was limited to occasional crouching, but under SSR 85-15, 1985 WL 56856, frequent crouching is required for most medium work. *Id*. But the Commissioner indicated one of the jobs identified—hand packager—does not require crouching according to the *DOT*[19] and has over 100,000 jobs in the national economy, thus supporting the ALJ's reliance on the vocational expert's testimony.[20] *Gaspard v. Comm'r of S.S.A.*, 609 F.Supp.2d 607, 617 (E.D. Tex. 2009) ("[t]he Commissioner's burden at Step 5 of the sequential evaluation process…is satisfied by showing the existence of only one job with a significant number of available positions that the claimant can perform."). Accordingly, because substantial evidence supports the ALJ's step five finding, the Court recommends that the Commissioner's denial of benefits be affirmed.

## IV. CONCLUSION

The Court recommends that the Commissioner's motion for summary judgment, EFC No. 16, be **GRANTED** and the Plaintiff's motion for summary judgment, ECF No. 12, be **DENIED.** The Commissioner's determination that the Plaintiff is not disabled should be **AFFIRMED** and Plaintiff's claims should be **DISMISSED WITH PREJUDICE.**

---

[19] The Department of Labor developed the Social Security Administration's main source of occupational information, the Dictionary of Occupational Titles ("DOT").

[20] 20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the Plaintiff] is able to meet…."); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude review of factual findings or legal conclusions, except for plain error.** *Quinn v. Guerrero*, **863 F.3d 353, 358 (5th Cir. 2017).**

Signed at Houston, Texas, on January 26, 2020.

_____
**Dena Hanovice Palermo
United States Magistrate Judge**